**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SPECTRANET TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>IMC-CHICAGO, LLC d/b/a IMC TRADING; IMC AMERICAS, INC.; IMC GLOBAL HOLDINGS LLC; RCA TELECOM LLC; and TOGGLE COMMUNICATIONS LLC,<br><br>Defendants. | Case No.: 1:26-cv-05838<br><br>Hon. Andrea R. Wood<br><br>**JURY TRIAL DEMANDED** |
| SPECTRANET TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>OPTIVER SERVICES B.V. and COUNTY INFORMATION SERVICES, LLC,<br><br>Defendants. | Case No.: 1:26-cv-05857<br><br>Hon. Andrea R. Wood<br><br>**JURY TRIAL DEMANDED** |
| SPECTRANET TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>JUMP FINANCIAL, LLC; JUMP TRADING HOLDINGS, LLC; JUMP TRADING, LLC; WORLD CLASS WIRELESS, LLC; VIRTU FINANCIAL, INC.; NEW LINE NETWORKS LLC; and 10BAND LLC,<br><br>Defendants. | Case No.: 1:26-cv-05866<br><br>Hon. Andrea R. Wood<br><br>**JURY TRIAL DEMANDED** |

| | |
|---|---|
| SPECTRANET TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>RAFT TECHNOLOGIES LTD and 3DB COMMUNICATION INC.,<br><br>Defendants. | Case No.: 1:26-cv-05870<br><br>Hon. Andrea R. Wood<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF SPECTRANET TECHNOLOGIES LLC'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. The Technical Problem Solved by the Asserted Patents: Latency on a Bandwidth-Constrained Ionospheric HF Link .......... 2

B. The Claimed Solution .......... 3

C. The Allegations in the Complaints .......... 4

III. LEGAL STANDARD .......... 4

IV. ARGUMENT .......... 5

A. *Alice* Step One: The Claims Are Directed to a Specific Improvement in Ionospheric HF Radio Transmission .......... 5

1. Defendants' Characterization Ignores the Claim Language .......... 5

2. The Claims Improve the Operation of an HF Radio Link .......... 6

3. Defendants' Authorities Involve Free-Standing Data Manipulation or Generic Wireless Communication .......... 7

4. The Claimed Method Cannot Be Performed in the Human Mind .......... 9

5. The Claims Recite How, Not Merely What .......... 10

6. Ionospheric HF Transmission Is Not a Mere Field of Use .......... 12

B. *Alice* Step Two: The Claims Recite an Inventive Concept, and at Minimum Fact Questions Preclude Dismissal .......... 12

1. The Ordered Combination Is Unconventional .......... 12

2. The Complaints' Factual Allegations Must Be Accepted as True .......... 14

3. Improved Latency Is a Technical Improvement .......... 16

C. Defendants Have Not Shown That Claim 1 of the '123 Patent Is Representative of All Sixty Claims .......... 16

1. Defendants' Motion Identifies Differences It Never Analyzes .......... 17

2. The Other Claims Recite Limitations Material to Eligibility .......... 17

3. A Terminal Disclaimer, a Shared Specification, and Pleading Choices Cannot Substitute for the Claim Language ............................................. 18

D. At a Minimum, the Eligibility Question Should Await Claim Construction........ 19

E. Any Dismissal Should Be Without Prejudice and With Leave to Amend ........... 20

V. CONCLUSION ........................................................................................................... 20

**TABLE OF ABBREVIATIONS**

| Abbreviations | Term |
|---|---|
| ’123 Patent | U.S. Patent No. 10,959,123 (Dkt. 1-1) |
| ’694 Patent | U.S. Patent No. 11,516,694 (Dkt. 1-2) |
| ’002 Patent | U.S. Patent No. 12,414,002 (Dkt. 1-3) |
| Asserted Patents | U.S. Patent Nos. 10,959,123; 11,516,994; and 12,414,002 |
| Complaint or Compl. | SpectraNet’s Complaint for Patent Infringement. *SpectraNet Techs. LLC v. IMC-Chicago, LLC, et al.*, No. 1:26-cv-05838, Dkt. 1. |
| Motion or Mot. | Memorandum of Law in Support of Defendants’ Motion to Dismiss Pursuant to Rule 12(b)(6). *SpectraNet Techs. LLC v. IMC-Chicago, LLC, et al.*, No. 1:26-cv-05838, Dkt. 40. |

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018) ........ passim

*Adaptive Streaming Inc. v. Netflix, Inc.*,
836 F. App'x 900 (Fed. Cir. 2020) ........ 8, 13

*ADASA Inc. v. Avery Dennison Corp.*,
55 F.4th 900 (Fed. Cir. 2022) ........ 7

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016) ........ 8

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ........ 5, 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4

*Atos, LLC v. Allstate Ins. Co.*,
No. 20-cv-06224, 2021 WL 6063963 (N.D. Ill. Dec. 22, 2021) ........ 12, 17, 18

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016) ........ 13, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ........ 5, 14, 15

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ........ 14

*CardioNet, LLC v. InfoBionic, Inc*,
955 F.3d 1358 (Fed. Cir. 2020) ........ 7

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019) ........ 5, 15

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
935 F.3d 1341 (Fed. Cir. 2019) ........ 8

*Constellation Designs, LLC v. LG Electronics Inc.*,
No. 2024-1822 (Fed. Cir. Apr. 28, 2026), *modified*,
No. 2024-1822 (Fed. Cir. Aug. 31, 2026) ........ 11

*Contour IP Holding LLC v. GoPro, Inc.*,
113 F.4th 1373 (Fed. Cir. 2024) ........ 7, 12

*Cooperative Ent., Inc. v. Kollective Tech., Inc.*,
50 F.4th 127 (Fed. Cir. 2022) ........ 14

*Customedia Techs., LLC v. Dish Network Corp.*,
951 F.3d 1359 (Fed. Cir. 2020) ........ 9, 16

*Diamond v. Diehr*,
450 U.S. 175 (1981) ........ 7

*directPacket Rsch., Inc. v. Polycom, Inc.*,
No. 2024-1147, 2025 WL 1752247 (Fed. Cir. 2025) ........ 8

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
815 F. App'x 529 (Fed. Cir. 2020) ........ 16

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ........ 1, 6, 7

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
60 F.4th 1349 (Fed. Cir. 2023) ........ 10

*IBM Corp. v. Zillow Grp., Inc.*,
50 F.4th 1371 (Fed. Cir. 2022) ........ 16

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019) ........ 1, 6

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016) ........ 5, 6, 10

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2024) ........ 17

*MyMail, Ltd. v. ooVoo, LLC*,
934 F.3d 1373 (Fed. Cir. 2019) ........ 19

*Ollnova Techs. Ltd. v. ecobee Techs. ULC*,
177 F.4th 1343 (Fed. Cir. 2026) ........ 7, 9

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017) ........ 8

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*,
786 F.3d 510 (7th Cir. 2015) ........ 20

*Sensormatic Elecs., LLC v. Wyze Labs, Inc.*,
No. 2020-2320, 2021 WL 2944838 (Fed. Cir. 2021) .................... 8

*Solutran, Inc. v. Elavon, Inc.*,
931 F.3d 1161 (Fed. Cir. 2019) .................... 18

*Thales Visionix Inc. v. United States*,
850 F.3d 1343 (Fed. Cir. 2017) .................... 7

*Trading Techs. Int'l, Inc. v. IBG LLC*,
921 F.3d 1084 (Fed. Cir. 2019) .................... 9, 16

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) .................... 11

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
957 F.3d 1303 (Fed. Cir. 2020) .................... 1, 6, 11, 16

*US Patent No. 7,679,637 LLC v. Google LLC*,
164 F.4th 1373 (Fed. Cir. 2026) .................... 20

**Statutes**

35 U.S.C. § 282 .................... 5

## I. INTRODUCTION

Defendants ask the Court to invalidate three issued patents at the pleading stage by recasting the patents' specific radio-engineering solution as Paul Revere's lanterns. Defendants' analogy fails on its own terms. Revere's lanterns crossed the Charles River by line of sight. The patents address a different problem: how to send a message hundreds of miles by High Frequency (HF) signals refracted off the ionosphere in the least possible time.

The patents solve that problem with a concrete physical-layer technique. They encode a requested action as a value whose meaning the receiver knows *a priori*, determine transmission parameters (such as frequency, modulation, and power) based on message latency and channel bandwidth, and transmit the encoded message over the HF band. The specification explains why this solution departs from conventional practice: the industry trend was to add bits for error correction, redundancy, and encryption. The patents instead teach reducing the bits that must be sent and compensating through the choice of transmission parameters.

That is an improvement to how a specific kind of radio link operates, not an abstract idea. The Federal Circuit has repeatedly held claims eligible where, as here, they improve the performance of a communication system through a specific technique. *See, e.g.*, *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143 (Fed. Cir. 2019); *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303 (Fed. Cir. 2020). Defendants reach the opposite result by generalizing the claims to a level of abstraction that no patent claim could survive: "receiving, encoding, determining, and transmitting." The Federal Circuit has warned against exactly that. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).

Even if the Court reaches Step Two, the Complaints plausibly allege that the claimed combination was unconventional, and the specification supports those allegations. Under *Berkheimer* and *Aatrix*, those factual allegations must be accepted as true at this stage.

Defendants have also failed to show that the one claim they analyze represents all 60 asserted claims. Their five-row chart groups and labels the dependent claims without analyzing any of them. That alone warrants denial. The Motion should be denied.

## II. BACKGROUND

### A. The Technical Problem Solved by the Asserted Patents: Latency on a Bandwidth-Constrained Ionospheric HF Link

SpectraNet alleges the Defendants infringe the ’123 Patent, the ’694 Patent, and the ’002 Patent. Compl. ¶ 1. The Asserted Patents share a specification describing a specific engineering problem. As of the 2012 priority date, communications technology was optimized for high data throughput and security, achieved by adding bits through higher order modulation, better encryption, and channel coding techniques. ’123 Patent, 1:21-46.[1] Low latency provides advantages for certain applications. *Id.*, 1:47-51; 4:56-5:7.

The specification addresses latency on HF transmissions that propagate by refraction off the ionosphere, reaching receivers hundreds of miles away without intermediate hops. *Id.*, 3:16-23; 4:9-41; 6:43-50; Fig. 1. Ionospheric transmission imposes difficult constraints, including delays varying with carrier frequency, elevation angle, the number of earth-ionosphere hops, time of day, and the solar cycle. *Id.*, 5:52-6:4.

“Message latency” is “the time it takes for a particular message to get from a point of origin to a point of destination,” and includes two components: message size latency and propagation latency *Id.*, 4:42-54. “Message size latency” is the delay associated with the number of bits, including assembling, buffering, and serially processing them. *Id.*, 4:54-5:6. “Propagation latency” is the “time it takes for a given bit to propagate from the point of origin to the point of

[1] Specification cites herein are to the ’123 Patent. The ’694 and ’002 Patents share substantially the same specification, however, the respective pin cites may slightly differ due to additional language in the respective “Cross Reference to Related Application” sections.

destination" and includes "latency caused by the radios, amplifiers, antennas, and any other equipment associated with transmission and reception of the message," as well as "the transmission medium." *Id.*, 5:42-51. Propagation latency depends on a number of variables, including carrier frequency and elevation angle**,** number of earth/ionospheric bounces and transmitter/receiver hops between the transmitting and receiving devices, time of day, and distance associated with the bounces. *Id.*, 5:55-67.

**B. The Claimed Solution**

The Asserted Patents disclose and claim techniques for minimizing latency within those constraints. First, a message including a requested action is encoded into a value already known by the receiver ("known *a priori*"), shrinking a message of more than 100 bits to as few as six or three. *Id.*, 5:7-29; 10:33-65; Figs. 6-8. Conventional channel coding, interleaving, redundancy, and encryption can also be omitted to further minimize the message size. *Id.*, 5:1-8; 11:44-46; cl. 15. Second, transmission parameters, such as carrier frequency, modulation type, transmission power, sample rates, buffer sizes, transmission order, and transmission bit rate, are determined for transmission of the encoded message, based on the message latency (including the size of the encoded message) and predefined channel bandwidth. *Id.*, 3:42-55; 7:47-8:46. For example, modulation type is chosen so that its spectral emission falls within a predefined channel bandwidth. *Id.*, 6:5-19. Transmission power may also "be adapted to transmit a message that contains no error correction at a relatively higher transmission power" to increase the Signal to Noise Ratio (SNR) of the transmission relative to a lower power transmission. *Id.*, 6:20-37.

The transmission parameters may also be determined based on estimated propagation latency, such as estimated time-of-flight that accounts for the number of ionospheric hops, the length of a hop, elevation angle, and ionospheric reflection height. *Id.*, 8:54-9:22. The '002

Patent's claims require selecting parameters "based on an estimated propagation latency for the one or more transmission parameters." '002 Patent, cls. 1, 15, 18.

### C. The Allegations in the Complaints

The Complaints allege that the claims are directed to "specific, technological improvements in wireless communications–namely, reducing end-to-end message latency by (i) encoding messages into compact representations that are known *a priori* to a receiving device (thereby reducing message-size-related latency), and (ii) selecting and controlling concrete physical-layer transmission parameters (*e.g.*, carrier frequency, modulation type, transmission power, sampling rate, buffer size) based on latency considerations and channel-bandwidth constraints applicable to ionospheric communications." Compl. ¶ 39. The Complaints further allege that the inventor, Mr. Jeff Adams, realized that while ionospheric HF transmission "offered benefits in propagation latency, it posed problems in message latency." *Id.*, ¶ 33. In particular, the "[p]ropagation latency gains provided by HF ionospheric transmissions were quickly consumed by losses in message latency as the size of the message increased." *Id.* Mr. Adams recognized this problem, and "realized that he could favorably effect message latency in ionospheric HF communications with encoding that was known by the receiving device thereby reducing bit-by-bit processing that was eating up the latency gains." *Id.*

## III. LEGAL STANDARD

For Rule 12(b)(6) motions, the Court accepts well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Patent eligibility may be resolved on the pleadings "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). Issued patents are presumed valid and

patent eligible, 35 U.S.C. § 282, and the movant bears the burden to prove otherwise. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019).

Under *Alice*, the Court first determines whether the claims are "directed to" a patent-ineligible concept. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). Step One looks to "whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016). Only if the claims fail Step One does the Court "consider the elements of each claim both individually and as an ordered combination to determine where the additional elements transform the nature of the claim into a patent-eligible application." *Alice*, 573 U.S. at 217-18 (quotations omitted). "The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

## IV. ARGUMENT

### A. *Alice* Step One: The Claims Are Directed to a Specific Improvement in Ionospheric HF Radio Transmission

#### 1. Defendants' Characterization Ignores the Claim Language

Defendants reduce claim 1 of the '123 Patent to "transmitting an encoded message." Mot. 6-9. That description omits most limitations in the claim, dropping the requirements of (1) an ionospheric RF transmission in the HF band; (2) a message encoded using a format "derived to effect message latency"; (3) a particular value within the encoded message be known *a priori* to the receiver as corresponding to a particular action; (4) transmission parameters determined

"based at least on (a) message latency and on (b) a predefined channel bandwidth"; and (5) the message transmitted "according to the determined transmission parameters." '123 Patent, cl. 1.

The Federal Circuit has rejected this approach. "[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337. Courts "must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims." *McRO*, 837 F.3d at 1313 (quotation omitted).

**2. The Claims Improve the Operation of an HF Radio Link**

The claims are directed to a specific technique for reducing latency on an ionospheric HF link. Claim 1 of the '123 Patent ties the *a priori* encoding to the physical transmission through message latency. The format of the encoded message is derived to effect message latency, which depends in part on the size of the message. Message latency and the channel's predefined bandwidth then inform the selection of transmission parameters such as carrier frequency, modulation, power, sampling rate, and buffer size. The encoded message is transmitted according to those parameters. '123 Patent, cl. 1; 2:65-3:7; 4:52-5:6; 5:30-41; 6:5-37; 7:47-8:46.

The Federal Circuit has repeatedly found claims of this kind eligible at Step One. In *Uniloc*, the claims added a field to a Bluetooth inquiry message so that parked secondary stations could be polled sooner, "eliminat[ing] or reduc[ing] the delay present in conventional systems …" 957 F.3d at 1307-08. "The claims of the '049 patent recite a specific improvement in the functionality of the communication system itself, namely the reduction of latency experienced by parked secondary stations. This is sufficient to pass muster under *Alice* step one." *Id.*, 1309.

In *KPN*, the claims recited a specific way of generating check data for error detection in data transmission. The court held them directed to a non-abstract improvement in an existing transmission process, even though error checking itself was well-known. 942 F.3d at 1150-51.

In *Thales*, the Federal Circuit held that claims using conventional inertial sensors in a particular configuration, together with mathematical equations, to improve tracking accuracy were not abstract. *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1348-49 (Fed. Cir. 2017).

And in *Ollnova*, the Federal Circuit held eligible claims to a device that transmitted sensor readings only during set intervals and only when a reading fell outside a predetermined range. *Ollnova Techs. Ltd. v. ecobee Techs. ULC*, 177 F.4th 1343, 1361-62 (Fed. Cir. 2026).

The claims here are of the same kind. They require an ionospheric HF transmission using transmission parameters determined based on message latency and channel bandwidth. The use of mathematics or data representation within such a physical process does not render it abstract. *Diamond v. Diehr*, 450 U.S. 175, 187 (1981); *ADASA Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 908-09 (Fed. Cir. 2022) (claims to a specific encoded data structure in RFID tags were not abstract); *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379-80 (Fed. Cir. 2024).

The specification confirms the focus by describing the prevailing emphasis on throughput and security (higher-order modulation, encryption, and channel coding), explaining that such operations add bits and therefore increase message-size latency, and describing the solution in technical terms. '123 Patent, 1:21-51; 4:60-5:41; 6:20-37; 11:40-46. Where a specification describes ***how*** a claimed invention improves existing technology, that supports a Step One finding of eligibility. *Enfish*, 822 F.3d at 1337.

### 3. Defendants' Authorities Involve Free-Standing Data Manipulation or Generic Wireless Communication

Defendants identify a handful of cases that treat encoding and format conversion as abstract (Mot. 7-8), but the claims in those cases had no connection to the physical characteristics of a transmission medium. *RecogniCorp* involved encoding facial images using a mathematical formula and reproducing them. The claims started and ended with data.

*RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326-27 (Fed. Cir. 2017). Thus, outside the math involved, the claims were directed to nothing that was otherwise eligible. *Id.*, 1327.

*Adaptive Streaming*, *Sensormatic*, and *directPacket* likewise concerned converting or translating data formats with no claimed change in how a physical link operates. *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 F. App'x 900, 903 (Fed. Cir. 2020) ("[T]he claims and written description make clear that the focus of the claimed advance is the abstract idea of format conversion, from an incoming signal's format to a variety of formats suited to different destination devices."); *Sensormatic Elecs., LLC v. Wyze Labs, Inc.*, No. 2020-2320, 2021 WL 2944838, at *3 (Fed. Cir. 2021) ("The claims, however, fail to set forth any particular physical configuration."); *directPacket Rsch., Inc. v. Polycom, Inc.*, No. 2024-1147, 2025 WL 1752247, at *4 (Fed. Cir. 2025) ("[T]he claim says little of *how* the purported invention improves the functionality of device interoperability.") (quotation omitted).

Here, by contrast, the claimed encoding is one component of a claimed physical-layer process. Message latency is an input to the determination of transmission parameters, and the message is then transmitted in the HF band according to those parameters. '123 Patent, cl. 1.

The wireless communications cases upon which Defendants rely are no more helpful. In *Chamberlain*, the claimed advance was simply communicating status information wirelessly without improving the wireless communication itself. *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348 (Fed. Cir. 2019). *Affinity Labs* concerned delivering broadcast content to a cellular phone without any technical improvement to the network. *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016). In *Ollnova,* the Federal Circuit distinguished both those cases because their claims were directed to nothing more than wirelessly communicating information "without altering when or how the information was

transmitted." *Ollnova*, 177 F.4th at 1361-62. SpectraNet's claims do exactly what those claims did not. They require that transmission parameters be determined based on message latency and channel bandwidth and that the message be transmitted according to those parameters.

In *Trading Techs*., the claims concerned a trading display that helped a trader process information; the improvement was to the trader, not to any machine. *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019). The Asserted Patents' independent claims do not mention trading at all. That the latency reduction is useful to traders does not convert a radio improvement into a business method. *Customedia* is similarly distinguishable, as the purported speed benefit came from using a computer to perform an existing practice; here, the reduced latency comes from how the transmission itself is configured. *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364-65 (Fed. Cir. 2020).

#### 4. The Claimed Method Cannot Be Performed in the Human Mind

Defendants' pencil-and-codebook theory (Mot. 9-10) ignores what the claims actually require: an ionospheric RF transmission in the HF band according to the determined parameters. A human cannot refract an HF signal off the ionosphere with a pencil and codebook. Defendants' argument works only by isolating individual steps and ignoring the claim as a whole, which *Alice* forbids. 573 U.S. at 218 n.3. The Federal Circuit rejected a similar human analogy in *Ollnova* because it failed to account for both the wireless communication problems the inventors addressed and the claimed improvements to device operation. 177 F.4th at 1362.

The parameter step is also not a mental exercise. The parameters are operating settings of a transmitter, such as carrier frequency, modulation type, and transmission power. '123 Patent, 2:65-3:7. The transmitter uses them directly. Its carrier signal generator, modulator, and power amplifier each operate based on the determined frequency, modulation type, and power. *Id.*, 9:46-55. The specification also describes basing the parameters on an estimated time of flight

that accounts for the number of ionospheric hops, the length of each hop, the elevation angle, and the reflection height. *Id.*, 8:54-9:17. And claim 1 of the '123 Patent requires that the encoded message be transmitted according to the determined parameters. *Id.*, 14:5-7. Determining settings that then govern a radio transmission is again not something a person does with pencil and paper.

**5. The Claims Recite How, Not Merely What**

Nor are the claims "purely functional." Mot. 10-11. Claim 1 specifies the inputs to the parameter determination (message latency and predefined channel bandwidth), the nature of the encoded value (known *a priori* to the receiver), and the manner of transmission. '123 Patent, cl. 1. That is a specific means of reducing latency, not a bare desired result. *See McRO*, 837 F.3d at 1316 ("The claim uses the limited rules in a process specifically designed to achieve an improved technological result in conventional industry practice.").

*Hawk*, on which Defendants rely, illustrates the difference. Mot. 10. The claims there recited "parameters" for converting video, but neither the claims nor the specification explained what the parameters were or how they should be manipulated. *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023). At most the claims concerned image formatting and compression. *Id.*, 1358. Here, claim 1 states what the parameters govern (HF transmission) and what they must be based on (message latency and predefined channel bandwidth). '123 Patent, cl. 1. The specification identifies the parameters and describes how they are selected. For example, a modulation type is selected so that its spectral emission falls within the channel bandwidth. *Id.*, 6:5-19. Transmission power may be raised to compensate for omitted error correction. *Id.*, 6:20-31. Claim 1 thus states what must be determined, from which inputs, and how the result must be used. That is a technique, not a result.

Defendants' assertion that the specification is "silent about which format or parameters to use, or how they should be selected" (Mot. 10) is contradicted by their own description of the

specification's disclosure: a six-bit encoded format with defined fields (citing '123 Patent, 5:11-22); a look-up table implementing the *a priori* encoding (citing *id.*, 7:41-46, Fig. 6); the transmission parameters to be determined (citing *id.*, 7:67-8:3, 2:65-3:15); and five named modulation types (citing *id.*, 6:13-19, 8:37-42). Mot. 2-3.

Defendants' other cases do not change the result. The claims in *Two-Way* required the functional results of converting, routing, controlling, and monitoring streamed information without describing how to achieve those results in a non-abstract way. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337-38 (Fed. Cir. 2017). In *Uniloc*, the Federal Circuit reversed a district court's finding that relied on *Two-Way* to hold claims abstract, because those claims, like the claims here, changed how the communication system itself operated to reduce latency. 957 F.3d at 1308-09.

*Constellation Designs, LLC v. LG Electronics Inc.* confirms the line SpectraNet draws. No. 2024-1822, slip op. at 10-11, 17-25 (Fed. Cir. Apr. 28, 2026). The Federal Circuit there divided the asserted claims into two groups. Claims reciting a constellation "optimized" for parallel-decode capacity were abstract because they claimed the result of optimization without limiting how it was achieved and so covered every way of reaching it. *Id.*, 17-19. But claims reciting the specific structural features of the constellation were eligible at Step One, because they claimed a particular configuration rather than a goal. *Id.*, 23-25.

Claim 1 falls on the eligible side of that line. It does not claim "a transmission optimized for latency." It recites a specific message structure (a value known *a priori* to the receiver as corresponding to a particular action) and a parameter determination keyed to two identified inputs: message latency, which the specification defines in terms of message-size latency and propagation latency, and the predefined channel bandwidth of the HF channel. '123 Patent, 3:24-

41; 4:42-5:51, cl. 1. It then requires that the transmission itself, in the ionospheric HF band, be governed by the resulting parameters. Like the eligible *Constellation* claims, and the *Ollnova* claims that conditioned transmission on a polling interval and a predetermined range, claim 1 defines the configuration of the transmission rather than merely its desired outcome.

#### 6. Ionospheric HF Transmission Is Not a Mere Field of Use

Finally, Defendants argue that limiting the claims to ionospheric HF transmission is a field-of-use restriction. Mot. 11. Here, the HF ionospheric environment is the very source of the technical problem addressed by claim 1. That problem includes the limited bandwidth, the trade-off between bit count, data rate, and spectral emission, and variables specifically associated with propagation and refraction through the ionosphere. '123 Patent, 3:24-41; 5:30-6:19. The claimed parameter determination responds specifically to those constraints. That is the opposite of a field-of-use limitation. *Contour* draws the same line. The claim there covered a camera that recorded two video streams in parallel and wirelessly transferred only the lower-quality stream. 113 F.4th at 1379-80. The court held that the claim "describes more than wireless data transfer within a particular technological environment" because it changed how the camera operated. *Id.*, 1380.

*Atos* does not hold otherwise. Mot. 11. The vehicle there was the setting in which generic sensors gathered data, and nothing in the claims improved the device used. *Atos, LLC v. Allstate Ins. Co.*, No. 20-cv-06224, 2021 WL 6063963, at *9-10, 13 (N.D. Ill. Dec. 22, 2021).

### B. *Alice* Step Two: The Claims Recite an Inventive Concept, and at Minimum Fact Questions Preclude Dismissal

#### 1. The Ordered Combination Is Unconventional

Even if the Court reaches Step Two (and it should not), the claims survive. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art," as "an inventive concept can be found in the non-conventional and non-

generic arrangement of known, conventional pieces." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Defendants argue at Step Two that individual components such as transmitters, modulators, amplifiers, and general-purpose computers are old and conventional. Mot. 12-13. But SpectraNet does not claim to have invented such individual components. The inventive concept lies in how the claims arrange the components. While the steps of the claimed invention (receiving, encoding, determining, and transmitting) follow a conventional order, that general sequence does not capture the claimed relationship between encoding a value known *a priori* to the receiver using a format derived to effect message latency, determining transmission parameters based at least on that latency and a predefined channel bandwidth, and transmitting the encoded message according to those parameters. '123 Patent, cl. 1.

The specification explains why the claim requirements work together. Message latency includes message-size and propagation components, and changing the number of transmitted bits can change message-size latency. *Id.*, 4:42-5:6. Modulation is selected based on message size and channel bandwidth so that the transmission's spectral emissions remain within the predefined bandwidth. *Id.*, 6:5-19. The inventive concept therefore lies in considering message latency and channel bandwidth to configure the transmission, together with the encoding and transmission steps. Defendants' reliance on known components and a conventional sequence does not establish the claimed arrangement was conventional. *See BASCOM*, 827 F.3d at 1350.

Defendants' authorities do not eliminate the need to assess the claimed arrangement. *Adaptive Streaming* concerned claims focused on abstract format conversion. 836 F. App'x at 903. *BSG Tech* held that the abstract idea itself cannot supply the inventive concept, even if that idea was unconventional. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir.

2018). SpectraNet does not rely on the asserted novelty of a prearranged code or on merely implementing that code with radio hardware. It relies on the relationship between encoding the message, determining transmission parameters based on message latency and channel bandwidth, and transmitting the message according to those parameters. ’123 Patent, cl. 1. The Court must assess whether that application supplies an inventive concept, and the conventionality of the individual components does not resolve that question. *BASCOM*, 827 F.3d at 1350.

**2. The Complaints’ Factual Allegations Must Be Accepted as True**

Whether a claim element or combination was well-understood, routine, and conventional is a question of fact. *Berkheimer*, 881 F.3d at 1368. Where a complaint plausibly alleges that the claimed combination was unconventional, and nothing in the intrinsic record refutes those allegations, dismissal under Rule 12(b)(6) is improper. *Aatrix*, 882 F.3d at 1126-28.

The Complaints allege that message-processing delays increased with message size and consumed the propagation-latency gains offered by ionospheric transmission. *E.g.*, Compl. ¶ 33. The Complaint further alleges that “[i]onospheric transmissions also pose reliability problems because they are sensitive to ever-changing environmental conditions that can diminish or eliminate the latency advantage.” *Id.* ¶ 34. The Asserted Patents address this problem “by selecting and controlling physical-layer transmission parameters (e.g., carrier frequency, modulation type, transmission power, sampling rate, buffer size) based on latency considerations and channel-bandwidth constraints.” *Id.* The Complaint also states that encoding known by the receiving device reduced the bit-by-bit processing that consumed the latency gains. *Id.* ¶ 33. It links that encoding to the selection of transmission parameters based on latency and bandwidth constraints. *Id.*, ¶ 42. These allegations are grounded in the specification, which explains how changing message size affects processing latency and how modulation may be selected based on message size and channel bandwidth. ’123 Patent, 4:58-5:6; 6:5-19. The allegations therefore

identify a technical problem and explain how encoding and transmission-parameter selection work together to address it.

Defendants' contrary factual assertions, such as that the determination of transmission parameters "was well known in the art" (Mot. 8), do not resolve whether the claimed combination was conventional. Defendants are correct that conclusory allegations of inventiveness need not be accepted as true, but they attack a generality rather than the pleaded invention. SpectraNet alleges how encoding reduces processing delays that consume propagation-latency gains and how transmission parameters are selected based on latency and bandwidth constraints. Compl. ¶¶ 33-34, 42. Labeling parameter selection conventional does not answer those allegations or establish that the claimed combination was routine. Defendants cannot obtain dismissal by substituting that broad characterization for an analysis of the claimed arrangement. *See Cellspin*, 927 F.3d at 1317-18.

The intrinsic record independently supports those allegations. The specification describes the conventional approach at the time: communications systems were optimized for throughput and security by adding bits through higher-order modulation, encryption, channel coding, interleaving, and redundancy. '123 Patent, 1:21-46. The claimed approach runs the other way. It reduces the message to a value known *a priori* to the receiver and determines the transmitter's physical-layer settings from the resulting message latency and the predefined channel bandwidth. *Id.*, 5:7-6:37. Where the specification describes the claimed combination as a departure from conventional practice, whether that combination was well-understood, routine, and conventional is a disputed question of fact. *Berkheimer*, 881 F.3d at 1369-70; *Aatrix*, 882 F.3d at 1128.

Defendants' authorities are not to the contrary. Mot. 15. *IBM* and *Dropbox* involved allegations that restated the claim elements and appended a conclusion that they solved a

technological problem. *IBM Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1379 (Fed. Cir. 2022); *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020). SpectraNet's Complaints do more. They identify the specific technical problem (message-size latency consuming the propagation-latency advantage of ionospheric transmission), explain why it arose (bit-by-bit processing of conventionally padded messages), and explain how the claimed combination addresses it. Compl. ¶¶ 33-34, 42. Those are factual allegations about the state of the art and the claimed advance, not labels.

#### 3. Improved Latency Is a Technical Improvement

Defendants' argument that improved trading speed is not an inventive concept (Mot. 14) misidentifies SpectraNet's asserted improvement. The asserted improvement is reduced latency of an HF link, achieved through specific changes to how the link operates. The specification discusses why latency matters commercially but claim 1 does not claim that motivation.

*Trading Techs.* concerned improvements to the information presented to a trader and the trader's ability to process it, rather than improvements to computer functionality. 921 F.3d at 1090-91. *Customedia* likewise rejected reliance on the increased speed or efficiency of performing an abstract idea with a computer. 951 F.3d at 1364-65. Neither decision makes reduced communication latency irrelevant when it results from a change in the communication system's operation. *Uniloc* recognized precisely that distinction in holding claims directed to a specific reduction in communication latency eligible at Step One. 957 F.3d at 1307-09. Here, the inventive concept is the claimed arrangement, not any trading advantage from reduced latency.

### C. Defendants Have Not Shown That Claim 1 of the '123 Patent Is Representative of All Sixty Claims

Defendants fail to establish that claim 1 of the '123 Patent is representative. They must first make a *prima facie* showing that the claims they group together are substantially similar and

linked to the same ineligible concept. *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024). SpectraNet then only needs to present a "non-frivolous argument" that claim 1 does not fairly represent the others, and Defendants must prove either that the differences are immaterial to eligibility or that each separately argued claim is ineligible. *Id.*

### 1. Defendants' Motion Identifies Differences It Never Analyzes

Defendants' generalization that every claim requires receiving, encoding, determining, and transmitting (Mot. 4) ignores what the claims actually recite. Claim 1 of the '694 Patent requires an encoded message be "smaller than the particular message"; claim 1 of the '002 Patent selects transmission parameters "based on estimated propagation latency" instead of message latency; and claim 18 of the '002 Patent "recites the reverse." Mot. 4. Defendants dispose of all three differences in one sentence, saying they "do not meaningfully alter the scope of those claims," but offer nothing to support their naked conclusion. *Id.*

Defendants' five-row chart that sorts 51 dependent claims into five categories without quoting a single word of claim language (Mot. 5) is not proof of representativeness. *Atos*, 2021 WL 6063963, at *7-8 (claim was representative where defendants "critically, support[ed] their position with language taken directly from the claims, describing why various additional limitations fail to meaningfully transform.").

### 2. The Other Claims Recite Limitations Material to Eligibility

At the pleading stage, SpectraNet needs to provide only a non-frivolous reason why a limitation missing from claim 1 could affect the analysis. *Mobile Acuity*, 110 F.4th at 1290-91. For example, independent claims 1 and 15 of the '002 Patent require selecting transmission parameters based on an *estimated propagation latency*, making the estimated physical travel time of the signal an input to parameter selection. '002 Patent, cls. 1, 15. That limitation bears directly on whether the claims merely recite sending an encoded message.

Claim 15 of the ’123 Patent differs from claim 1 of the ’123 Patent by requiring the transmission “without error correction coding, error detection coding, and without encryption.” ’123 Patent, cl. 15. This limitation reflects the ’123 Patent’s departure from the conventional practice of adding channel coding and encryption. ’123 Patent, 1:31-37; 6:20-37.

Claim 18 of the ’002 Patent differs even more. It is a receiver-side method that requires receiving a message that was transmitted using such parameters, decoding that message, and performing an action. ’002 Patent, cl. 18. It recites no encoding, determining, or transmitting step, so Defendants’ four-step description does not fit it at all.

Each of these limitations alone gives a non-frivolous reason why the eligibility of claim 1 cannot decide the eligibility of the other claims, and that is all *Mobile Acuity* requires.

### 3. A Terminal Disclaimer, a Shared Specification, and Pleading Choices Cannot Substitute for the Claim Language

Defendants further argue that the presence of terminal disclaimers in the ’694 and ’002 Patents “confirm the representativeness” of claim 1. Mot. 4-5. But, the “key, as with any analysis of patent eligibility, is that the inquiry be ‘directly tethered to the claim language.’” *Atos*, 2021 WL 6063963 at *8 (quotation omitted). Here, Defendants make no effort to tether the disclaimers to the claim language. They do not cite the prosecution history or the disclaimers, or say which claims drew double-patenting rejections or which earlier claims they were rejected over.

Defendants argue the Complaints treat claim 1 of each patent identically, but concede that those “pleading choices do not control the inquiry.” Mot. 4. While they are right that the pleading does not control, they are incorrect that claim 1 of each patent is treated identically. *Compare, e.g.*, ¶ 71 (determining parameters based on ***message*** latency) and ¶ 109 (selecting parameters based on ***propagation*** latency). How SpectraNet pleaded infringement says nothing

about whether limitations found only in other claims, including the 57 claims not plead in detail in the Complaint, matter under § 101.

### D. At a Minimum, the Eligibility Question Should Await Claim Construction

If the Court has any doubt whether claim 1 recites a specific technique, that doubt turns on disputed claim terms, and the eligibility question should await claim construction. Defendants argue that Step One depends on reading three terms at their broadest: "message latency," "format derived to effect message latency," and "transmission parameters." Mot. 9-10. Construed in light of the specification, each term narrows the claim in ways that bear directly on eligibility:

> "Message latency": the time it takes for a particular message to get from a point of origin to a point of destination, including message-size latency and propagation latency. '123 Patent, 4:42-5:51. This construction ties the claimed parameter determination to specific, measurable physical quantities, namely message size and time of flight, rather than to an abstract goal.

> "Format derived to effect message latency": an encoding format whose size in bits is selected to reduce message size latency for transmission within a predefined channel bandwidth. *Id.*, 5:7-41; 10:33-65; Figs. 6-8. This construction answers Defendants' assertion that the claimed format is unspecified.

> "Transmission parameters": physical-layer operating settings of a transmitter, such as frequency, modulation type, power level, bit rate, transmission order, sample rate, buffer size, and transmission time. *Id.*, 2:65-3:15; 7:47-8:46 9:47-56. This construction refutes that "determining" the parameters is a mental step, because the determined parameters configure the transmitter's carrier signal generator, modulator, and power amplifier.

When the parties raise such claim construction disputes at the Rule 12(b)(6) stage, the court "must either adopt the non-moving party's constructions or resolve the dispute to whatever extent is needed to conduct the § 101 analysis." *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019); *see also Aatrix*, 882 F.3d at 1125.

Unlike the patentee in *US Patent No. 7,679,637 LLC v. Google LLC*, 164 F.4th 1373, 1380 (Fed. Cir. 2026), which did not explain how claim construction would affect the eligibility analysis, SpectraNet has identified specific terms, proposed constructions grounded in the specification, and the *Alice* arguments those constructions resolve. Under these constructions, which the Court must adopt for purposes of this motion, the claims are not directed to an abstract idea. At a minimum, the eligibility question should be deferred until claim construction.

### E. Any Dismissal Should Be Without Prejudice and With Leave to Amend

If the Court finds any claim ineligible on the current pleadings, SpectraNet requests leave to amend. A plaintiff whose original complaint is dismissed under Rule 12(b)(6) should receive at least one opportunity to amend, unless amendment would be futile. *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519-20 (7th Cir. 2015). Amendment would not be futile here. Because Step Two turns on questions of fact, a patentee may cure a pleading deficiency by adding specific allegations regarding the unconventional nature of the claimed combination, and it is error to deny leave to do so. *Aatrix*, 882 F.3d at 1126-28. Defendants' citation to *Natsoft* for the premise that "patent ineligibility cannot be cured through amendment" (Mot. 15-16) holds only where eligibility is resolved purely as a matter of law. That is not the case here.

## V. CONCLUSION

For the foregoing reasons, SpectraNet respectfully requests that the Court deny Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) in its entirety. In the alternative, SpectraNet requests that the Court defer the eligibility question until after claim construction, or grant SpectraNet leave to amend.

Dated: October 23, 2026

Respectfully submitted,

*/s/ Charles C. Koole*
Paul J. Skiermont (IL. Bar No. 6278464)
Kevin P. Potere (TX Bar No. 24100658)
Michael D. Ricketts (TX Bar No. 24079208)
**SKIERMONT DERBY LLP**
1601 Elm Street, Suite 4400
Dallas, TX 75201
Phone: (214) 978-6600
Fax: (214) 978-6601
pskiermont@skiermontderby.com
kpotere@skiermontderby.com
mricketts@skiermontderby.com

Charles C. Koole (CA Bar No. 259997)
**SKIERMONT DERBY LLP**
633 West Fifth Street, Suite 5800
Los Angeles, CA 90071
Phone: (213) 788-4500
Fax: (213) 788-4501
ckoole@skiermontderby.com

*Attorneys for Plaintiff*
SpectraNet Technologies LLC

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2026, all counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system.

*/s/ Charles C. Koole*