**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SPECTRANET TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>IMC-CHICAGO, LLC d/b/a IMC TRADING; IMC AMERICAS, INC.; IMC GLOBAL HOLDINGS LLC; RCA TELECOM LLC; and TOGGLE COMMUNICATIONS LLC,<br><br>Defendants. | Case No. 1:26-cv-05838<br><br>Hon. Andrea R. Wood<br><br>**HEARING REQUESTED** |
| SPECTRANET TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>OPTIVER SERVICES B.V. and COUNTY INFORMATION SERVICES, LLC,<br><br>Defendants. | Case No. 1:26-cv-05857<br><br>Hon. Andrea R. Wood<br><br>**HEARING REQUESTED** |
| SPECTRANET TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>JUMP FINANCIAL, LLC; JUMP TRADING HOLDINGS, LLC; JUMP TRADING, LLC; WORLD CLASS WIRELESS, LLC; VIRTU FINANCIAL, INC.; NEW LINE NETWORKS LLC; and 10BAND LLC,<br><br>Defendants. | Case No. 1:26-cv-05866<br><br>Hon. Andrea R. Wood<br><br>**HEARING REQUESTED** |

SPECTRANET TECHNOLOGIES LLC,

Plaintiff,

v.

RAFT TECHNOLOGIES LTD and 3DB COMMUNICATION INC.,

Defendants.

Case No. 1:26-cv-05870

Hon. Andrea R. Wood

**HEARING REQUESTED**

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

## TABLE OF CONTENTS

**Page**


I. THE ASSERTED CLAIMS ARE NOT PATENT ELIGIBLE .......... 1

A. *Alice* Step One: The Representative Claim Is Directed to an Abstract Idea .......... 1

1. The Focus of the Claim Is Transmitting an Encoded Message .......... 1

2. The Claim Does Not Recite a Specific Improvement in HF Communication .......... 4

B. *Alice* Step Two: The Representative Claim Lacks Any Inventive Concept .......... 7

II. CLAIM 1 OF THE ’123 PATENT IS REPRESENTATIVE .......... 8

III. CLAIM CONSTRUCTION WILL NOT SAVE THE CLAIMS .......... 9

IV. DISMISSAL WITH PREJUDICE SHOULD BE GRANTED .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ADASA Inc. v. Avery Dennison Corp.*,
55 F.4th 900 (Fed. Cir. 2022) ....................6

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016)....................2, 3, 4

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014)....................9

*Atos, LLC v. Allstate Ins. Co.*,
2021 WL 6063963 (N.D. Ill. Dec. 22, 2021)....................8

*Broadband iTV, Inc. v. Amazon.com, Inc.*,
113 F.4th 1359 (Fed. Cir. 2024) ....................4

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)....................7, 8

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
935 F.3d 1341 (Fed. Cir. 2019)....................3

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019)....................5

*Contour IP Holding LLC v. GoPro, Inc.*,
113 F.4th 1373 (Fed. Cir. 2024) ....................6

*Customedia Techs., LLC v. Dish Network Corp.*,
951 F.3d 1359 (Fed. Cir. 2020)....................4

*Diamond v. Diehr*,
450 U.S. 175 (1981)....................6

*directPacket Rsch., Inc. v. Polycom, Inc.*,
2025 WL 1752247 (Fed. Cir. June 25, 2025) ....................6

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
815 F. App'x 529 (Fed. Cir. 2020) ....................8

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)....................3

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)....................7

*GoTV Streaming, LLC v. Netflix, Inc.*,
166 F.4th 1053 (Fed. Cir. 2026) ....................3, 8

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
60 F.4th 1349 (Fed. Cir. 2023) ....................3

*Jedi Techs., Inc. v. Spark Networks, Inc.*,
2017 WL 3315279 (D. Del. Aug. 3, 2017) ....................2

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
942 F.3d 1143 (Fed. Cir. 2019)....................6

*Mobile Acuity Ltd. v. Blippar Ltd.*,
110 F.4th 1280 (Fed. Cir. 2024) ....................8, 9

*Ollnova Technologies Ltd. v. ecobee Technologies ULC*,
177 F.4th 1343 (Fed. Cir. 2026) ....................6

*People.ai, Inc. v. Clari Inc.*,
2023 WL 2820794 (Fed. Cir. Apr. 7, 2023) ....................7

*PersonalWeb Techs. LLC v. Google LLC*,
8 F.4th 1310 (Fed. Cir. 2021) ....................3

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017)....................1, 2, 9

*Simio, LLC v. Flexsim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020)....................10

*SimpleAir, Inc. v. Google LLC*,
884 F.3d 1160 (Fed. Cir. 2018)....................8

*Solutran, Inc. v. Elavon, Inc.*,
931 F.3d 1161 (Fed. Cir. 2019)....................2

*Thales Visionix Inc. v. United States*,
850 F.3d 1343 (Fed. Cir. 2017)....................6

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023) ....................10

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017)....................2, 7

*Uniloc USA, Inc. v. LG Electronics USA, Inc.*,
957 F.3d 1303 (Fed. Cir. 2020)....................5

*Voit Techs., LLC v. Del-Ton, Inc.*,
757 F. App'x 1000 (Fed. Cir. 2019) ....................3

*Yu v. Apple Inc.*,
1 F.4th 1040 (Fed. Cir. 2021) ....................2

## TABLE OF ABBREVIATIONS

| Abbreviation | Term |
|---|---|
| ’002 Patent | U.S. Patent No. 12,414,002 (Dkt. No. 1-3) |
| ’123 Patent | U.S. Patent No. 10,959,123 (Dkt. No. 1-1) |
| ’694 Patent | U.S. Patent No. 11,516,694 (Dkt. No. 1-2) |
| Asserted Patents | U.S. Patent Nos. 10,959,123, 11,516,694, and 12,414,002 |
| Complaint(s) or Compl.[1] | *SpectraNet Techs. LLC v. Optiver Services B.V.*, No. 1:26-cv-05857, Dkt. No. 1; *SpectraNet Techs. LLC v. IMC-Chicago, LLC d/b/a IMC Trading*, No. 1:26-cv-05838, Dkt. No. 1; *SpectraNet Techs. LLC v. Jump Financial, LLC*, No. 1:26-cv-05866, Dkt. No. 1; *SpectraNet Techs. LLC v. Raft Technologies Ltd.*, No. 1:26-cv-05870, Dkt. No. 1 |
| HF | High Frequency |
| Motion or Mot. | Memorandum of Law in Support of Defendants’ Motion to Dismiss Pursuant to Rule 12(b)(6) (No. 1:26-cv-05857, Dkt. No. 41) |
| Opposition or Opp. | Plaintiff SpectraNet Technologies LLC’s Opposition to Defendants’ Motion to Dismiss Pursuant to Rule 12(b)(6) (No. 1:26-cv-05857, Dkt. No. 56) |
| SpectraNet or Plaintiff | Plaintiff SpectraNet Technologies LLC |

[1] This brief cites the Complaint filed in the *Optiver* action, but the cited disclosures occur across the Complaints in all four actions.

The Asserted Patents claim the idea of transmitting an encoded message, which the Federal Circuit has long held is abstract; nothing in SpectraNet's Opposition changes that. The claim language as a whole governs the analysis under *Alice* Step One and, here, the claims require four simple steps: "receiving a request," "encoding a particular value . . . into an encoded message," "determining transmission parameters," and "transmitting the encoded message." '123 Patent, cl. 1. Cases like *RecogniCorp*, *Two-Way Media*, *directPacket*, and *Chamberlain* make clear that claims directed to the idea of transmitting an encoded message are abstract. Nor do the claims recite an improvement to HF communication. The encoding step would reduce latency in any mode of communication and limiting encoding to HF communication does not make it any less abstract. At *Alice* Step Two, SpectraNet concedes that the claims use conventional components in a conventional order, confirming the claims lack any cognizable inventive concept.

SpectraNet's final attempts to salvage the Asserted Patents also fail. SpectraNet does not identify any claims that would not be adequately represented by the representative claim. And the claims are directed to ineligible subject matter even under SpectraNet's proposed constructions. Leave to amend would be futile and dismissal with prejudice should be granted.

## I. THE ASSERTED CLAIMS ARE NOT PATENT ELIGIBLE

### A. *Alice* Step One: The Representative Claim Is Directed to an Abstract Idea

#### 1. The Focus of the Claim Is Transmitting an Encoded Message

Claim 1 of the '123 Patent, the representative claim, is ineligible under *Alice* Step One because it is directed to the abstract idea of transmitting an encoded message. *See, e.g.*, *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (holding that "standard encoding and decoding [are] an abstract concept long utilized to transmit information"). SpectraNet does not dispute that transmitting an encoded message is ineligible; instead, it accuses Defendants of "oversimplifying the claims." Opp. at 5–6. But the Step One inquiry assesses "the

language of the [a]sserted [c]laims" and their "character as a whole" to determine the "focus of the claimed advance." *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016); *see also Jedi Techs., Inc. v. Spark Networks, Inc.*, 2017 WL 3315279, at *8 (D. Del. Aug. 3, 2017) (noting a "bedrock principle under *Alice* step one involves distilling claims to their basic concepts").

Defendants' description of the abstract idea is not "untethered" from the claims, *see* Opp. at 6, but "tracks the claim language and accurately captures what the patent asserts to be 'the focus of the claimed advance.'" *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019). SpectraNet agrees that the claim requires: "encod[ing] a requested action as a value whose meaning the receiver knows *a priori*, determin[ing] transmission parameters (such as frequency, modulation, and power) based on message latency and channel bandwidth, and transmit[ting] the encoded message over the HF band." Opp. at 1. Therefore, distilled to its basic concept, the representative claim is directed to the abstract idea of transmitting an encoded message.

Each step individually recites an abstract idea. Turning to the encoding step, SpectraNet does not contest that standard "encoding and format conversion" is an abstract idea. Opp. at 7. Rather, it argues the claim requires the encoded value to "be known *a priori* to the receiver" and to use a "format derived to effect message latency." Opp. at 5. Neither element saves this step. *A priori* encoding is a typical feature of standard encoding and decoding, and, indeed, in exemplary coding systems, like "Morse code" and "Paul Revere's . . . signaling system," it is well known that the recipient *must* know the code in advance for it to be effective. *RecogniCorp*, 855 F.3d at 1326. The claims also do not specify the "format" that would "effect message latency," and thus do not "sufficiently describe how to achieve the[] results in a non-abstract way." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). While SpectraNet notes

that the specification identifies a "six-bit encoded format," Opp. at 11, such is irrelevant as "only features that are claimed, not unclaimed details that appear in the specification, can supply something beyond ineligible matter." *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1061 (Fed. Cir. 2026). Regardless, compressing data to a certain number of bits is still an abstract idea. *See, e.g.*, *Voit Techs., LLC v. Del-Ton, Inc.*, 757 F. App'x 1000, 1002 (Fed. Cir. 2019). SpectraNet also does not dispute that this step can be performed in the human mind, "a telltale sign of abstraction." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1316 (Fed. Cir. 2021).

The remaining limitations are directed to standard steps for any mode of transmission: determining transmission parameters then transmitting the message. Those requirements are also abstract concepts. *See, e.g.*, *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1358 (Fed. Cir. 2023) (holding claims reciting "temporal and spatial" parameters for "image formatting and compression" abstract where the claims "fail to specify precisely what the parameters are"); *Voit Techs.,* 757 F. App'x at 1002 (holding claims directed to abstract idea of, in part, transmitting data); *see also* Mot. at 8–9.[2] Nor do these steps recite how to "determin[e] transmission parameters . . . based at least on [] message latency and on [] a predefined channel bandwidth." This circular claim language is the result-oriented, functional language that is a frequent feature of ineligible claims. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1356 (Fed. Cir. 2016). Notably, SpectraNet concedes that claims "optimizing" parameters to achieve a result are abstract where

---

[2] SpectraNet argues that the other claimed steps cannot be performed by the human mind. Opp. at 4. But the determining step could be performed by a human in the mind (or at least with a pen and paper), and SpectraNet even cites to portions of the specification identifying exemplary settings or mathematical equations that an operator would use to calculate the appropriate parameters. *See, e.g.*, '123 Patent, 6:5–19, 8:54–9:22. Nor do claims need to be performed entirely in the mind to be abstract. *See, e.g., Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346 (Fed. Cir. 2019) ("wirelessly communicating status information"); *Affinity Labs*, 838 F.3d at 1258 ("out-of-region access to regional broadcast content").

"they claimed the result of optimization without limiting how it was achieved." Opp. at 11 (discussing *Constellation Designs*). If "optimizing" parameters is abstract, then "determining" parameters (a broader step) is necessarily abstract. Moreover, combining each of these abstract ideas together "does not render an abstract idea less abstract." *Broadband iTV, Inc. v. Amazon.com, Inc.*, 113 F.4th 1359, 1368 (Fed. Cir. 2024); *see also* Mot. at 9.

**2. The Claim Does Not Recite a Specific Improvement in HF Communication**

SpectraNet asserts that "[t]he claims are directed to a specific technique for reducing latency on an ionospheric HF link," Opp. at 6, but the claims recite the use of standard techniques that are not specific to HF communication. The alleged reduction in latency results from "encoding" the message and "reducing the bits that must be sent," *id.* at 1, 6, yet nothing about encoding and reducing the bits is specific to HF communication—to the contrary, the specification confirms that "encoding the message to effect message latency . . . may be employed for message transmission via the ionosphere or other atmospheric layers," including, for example "Medium Frequency," "Very High Frequency," or "tropospheric transmissions." '123 Patent, Abstract, 2:59–64, 6:38–42. Nor does SpectraNet assert that either the "determining" or the "transmitting" step is a specific improvement to HF communication. Both are standard transmission steps.

Furthermore, the alleged improvement in reducing latency is just a simple improvement in speed or efficiency, which is "insufficient to render the claims patent eligible as an improvement to computer functionality." *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020). And "limiting the field of use of the abstract idea to a particular existing technological environment [such as HF communication] does not render the claims any less abstract." *Affinity Labs*, 838 F.3d at 1259.

SpectraNet attempts to distinguish Defendants' cited case law by contending that the claims are directed to a "concrete physical-layer technique" that changes "how a physical link

operates." Opp. at 1, 6–8. However, no such limitation is required by the claims. And SpectraNet identifies no support in the claims for this reading and relies heavily on importing elements from the specification. *See id*. "[W]hile the specification may help illuminate the true focus of a claim, when analyzing patent eligibility," "the specification cannot be used to import details from the specification if those details are not claimed." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766, 769 (Fed. Cir. 2019). Here, the claims leave ionospheric communication exactly as it was: a conventional transmitter, conventional refraction, and a conventional receiver, with no new antenna, modulation technique, or physical-layer protocol. *See* Mot. at 3, 13.

SpectraNet's cited cases are all distinguishable because the claims in those cases all captured specific improvements to the particular technical environment. *See* Opp. at 6–7. For example, in *Uniloc USA, Inc. v. LG Electronics USA, Inc.*, the challenged claims were directed to "a specific improvement in the functionality of the communication system itself, namely the reduction of latency experienced by parked secondary stations." 957 F.3d 1303, 1309 (Fed. Cir. 2020). The "specific improvement" included adding a "data field for polling" to "each inquiry message prior to transmission" to "send inquiry messages and conduct polling simultaneously," thereby changing the way the secondary stations and system worked. *Id*. at 1305–08. Here, the language of the encoding and determining steps does not specify how a message must be encoded or formatted and how to determine optimal transmission parameters. More importantly, neither step changes how HF transmission or its components operate (as made clear by the specification's assertion that similar techniques can be used for non-HF transmissions). *See* '123 Patent, 2:59–64, 6:38–42; *infra* § I.B. And unlike here, the defendants did not dispute that the claimed technological "improvement" in latency was patent eligible, instead contending that "the claims are not sufficiently directed to this purported improvement." *Uniloc*, 957 F.3d at 1308.

SpectraNet's remaining cases are similarly inapposite. In *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, the claims required "that the permutation applied to original data be modified 'in time,'" which was "a specific implementation of varying the way check data is generated" in "data transmission error detection" systems. 942 F.3d 1143, 1150–51 (Fed. Cir. 2019). In *Thales Visionix Inc. v. United States*, the claims were "directed to systems and methods that use inertial sensors in a non-conventional manner to reduce errors" in tracking a moving object. 850 F.3d 1343, 1348–49 (Fed. Cir. 2017). And in *Ollnova Technologies Ltd. v. ecobee Technologies ULC*, the claims recited "improvements in a building automation system" "using a wireless automation device," including monitoring a parameter "only during a polling interval," and transmitting that parameter "only during a transmission interval and only when that parameter is outside a predetermined range." 177 F.4th 1343, 1348, 1361 (Fed. Cir. 2026).[3]

Unlike the claims in the above cases, the claim language here recites a series of abstract and admittedly conventional steps that apply well beyond HF communication systems: receiving a request, encoding a message using a known code, determining settings, and then transmitting the message. Mot. at 7–9; Opp. at 13; *see infra* § I.B. The "limitations are recited at such a level of result-oriented generality" that does not "recite a specific enough solution to make the asserted technological improvement concrete." *directPacket Rsch., Inc. v. Polycom, Inc.*, 2025 WL 1752247, at *4 (Fed. Cir. June 25, 2025) (citations omitted); *see also* Mot. at 10.

Nor does the specification "confirm[] the focus" of the claims on the physical

---

[3] Nor does Claim 1 have the specific technological means as claimed in *Diehr*, *ADASA*, and *Contour IP*. In *Diehr*, the claims were directed to a specific process of curing synthetic rubber; in *ADASA*, the claims were directed to "a specific, hardware-based RFID serial number data structure"; and in *Contour IP*, the claims required a "parallel data stream recording with the low-quality recording wirelessly transferred to a remote device." *Diamond v. Diehr*, 450 U.S. 175, 187 (1981); *ADASA Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 908 (Fed. Cir. 2022); *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1379 (Fed. Cir. 2024).

characteristics of an HF transmission. Opp. at 7. SpectraNet broadly asserts that a specification that describes "how" a claimed invention improves existing technology supports a finding of eligibility, *id.*, but *Enfish* requires more. In *Enfish*, the specification described how the claimed self-referential table "function[ed] differently than conventional database structures." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). Here, the specification does not describe a specific improvement to HF transmissions, but instead describes the invention generally, as "[t]echnology for wireless transmission of messages to remote receiving devices" that "may . . . effect message latency" in the ionosphere and "other systems." '123 Patent, 2:53–64, 4:58–5:1.

### B. *Alice* Step Two: The Representative Claim Lacks Any Inventive Concept

The representative claim lacks any inventive concept under *Alice* Step Two because it simply recites "a conventional ordering of steps . . . with conventional technology." *Two-Way Media*, 874 F.3d at 1339. The parties agree that "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces," *People.ai, Inc. v. Clari Inc.*, 2023 WL 2820794, at *14 (Fed. Cir. Apr. 7, 2023) (citation omitted), but SpectraNet does not dispute that the components are conventional and concedes that "the steps of the claimed invention (receiving, encoding, determining, and transmitting) follow a conventional order." Opp. at 13. SpectraNet instead purports to locate its inventive concept in the "relationship" among the claimed steps. *Id.* at 13–14. But that relationship—encode the message then pick settings to send it quickly—is the abstract idea itself, which, as SpectraNet acknowledges, cannot supply the inventive concept "even if that idea was unconventional." *Id.* at 13; *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018). Moreover, the asserted "relationship" is nothing more than using information associated with one step (the encoded message) to decide the next (transmission parameters). Every sequential process carries forward the output of an earlier step; labeling that dependency a "relationship" does not convert a concededly conventional sequence

into an inventive arrangement. *See BSG Tech*, 899 F.3d at 1290–91.

Nor does SpectraNet identify any questions of fact under Step Two that would otherwise preclude dismissal of the claims. SpectraNet argues that the allegations in the Complaints "identify a technical problem and explain how encoding and transmission-parameter selection work together to address it." Opp. at 14–16. Even if true, the alleged "technological improvement" merely "append[s] a conclusory statement" that the claimed invention improves "end-to-end message latency" as a result of the abstract idea itself. *Id.* at 4; *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020); *BSG Tech*, 899 F.3d at 1290–91.

## II. CLAIM 1 OF THE '123 PATENT IS REPRESENTATIVE

Claim 1 of the '123 Patent is representative of all of the claims of the Asserted Patents because they are "substantially similar and linked to the same" ineligible concept. *See Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280, 1290 (Fed. Cir. 2024). All of the independent claims recite the same general steps: "receiving," "encoding," "determining," and "transmitting." *See* Opp. at 1, 6. SpectraNet argues that Defendants' terminal disclaimer argument is untethered from the claim language, Opp. at 18, but the file history confirms that, for example, the claims of the '002 Patent were rejected over the claims of the '123 and '694 Patents for being "substantively the same." Ex. 1 (Mar. 17, 2025 Non-Final Rejection) at 7, 9; *see also* Ex. 2 (Mar. 18, 2021 Terminal Disclaimer).[4] In any event, SpectraNet misses the point: the terminal disclaimers are "a strong clue" for treating Claim 1 as representative because the applicant, "by concession," saw no "patentable distinction" among the claims. *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1168

[4] The law is clear that, for a Section 101 analysis, courts examine "the meaning of the claims and specification (and prosecution history if pertinent)." *GoTV Streaming*, 166 F.4th at 1067; *see also Atos, LLC v. Allstate Ins. Co.*, 2021 WL 6063963, at *2 & n.6 (N.D. Ill. Dec. 22, 2021) (considering a terminal disclaimer in ruling on a Section 101 motion to dismiss).

(Fed. Cir. 2018). The burden thus shifted to SpectraNet to explain "why a claim limitation not found in the representative claim has 'distinctive significance' that would have a material impact on the eligibility analysis," which it fails to do. *Mobile Acuity*, 110 F.4th at 1290.

Beyond that, none of the three elements SpectraNet identifies is material to eligibility. First, claims 1 and 15 of the '002 Patent require selecting transmission parameters "based on an estimated propagation latency." '002 Patent, cls. 1, 15. But by SpectraNet's own definition, propagation latency is a component of the "message latency" recited in Claim 1, Opp. at 2, so the limitation does not change the claim's character in any meaningful way. Second, dependent claim 15 of the '123 Patent requires "transmitting the message without error correction coding, error detection coding, and without encryption." '123 Patent, cl. 15. There is nothing "inventive" about transmitting an encoded message without these features, and this claim "simply append[s] conventional steps" by claiming what the method omits, which is not enough to supply an inventive concept. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 222 (2014). Third, claim 18 of the '002 Patent requires "receiving . . . an encoded message" transmitted using selected transmission parameters and decoding that message. '002 Patent, cl. 18. Claim 18 is directed to the same abstract idea from the receiver side rather than the transmitter side, which is still ineligible. *See, e.g.*, *RecogniCorp*, 855 F.3d at 1326.

For the dependent claims, SpectraNet contends that Defendants fail to quote "a single word of claim language." Opp. at 17. This is the kind of specious argument that does not explain why any additional limitations have "distinctive significance." *Mobile Acuity*, 110 F.4th at 1290. And the Motion's chart explains why each group of dependent claims adds nothing material. Mot. at 5.

## III. CLAIM CONSTRUCTION WILL NOT SAVE THE CLAIMS

A "patentee must do more than invoke a generic need for claim construction . . . to avoid grant of a motion to dismiss under § 101. Instead, the patentee must propose a specific claim

construction . . . and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes." *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360–61 (Fed. Cir. 2023). Faced with this burden, SpectraNet provides three unsupported constructions. SpectraNet provides no claim construction analysis; cites, without explanation, a few passages of the specification; and offers one-sentence conclusions of how these constructions might somehow engage Defendants' arguments. Opp. at 19. Nor does SpectraNet explain why any of its constructions must be resolved first. *See Trinity*, 72 F.4th at 1360–61.

Moreover, even if this Court were to adopt SpectraNet's proposed constructions, the claims are still directed to the abstract idea of transmitting a smaller, encoded message. None supplies the required "how" that Claim 1 lacks. Construing "message latency" to include message-size and propagation latency still leaves Claim 1 silent on "how" either dictates any parameter. Construing the "format" as one "whose size in bits is selected to reduce message size latency" defines it by its goal—such result-oriented claiming has repeatedly been held ineligible. And construing "transmission parameters" as a transmitter's "physical-layer operating settings" confirms only that the abstract idea is applied using conventional radio equipment. *See* Mot. at 3, 12–13.

## IV. DISMISSAL WITH PREJUDICE SHOULD BE GRANTED

SpectraNet's request for leave to amend is futile because SpectraNet identifies no "new factual allegations" that could "save the asserted claims from ineligibility at the pleadings stage." *Simio, LLC v. Flexsim Software Prods., Inc.*, 983 F.3d 1353, 1364 (Fed. Cir. 2020). SpectraNet generically asserts that it could add "specific allegations regarding the unconventional nature of the claimed combination," Opp. at 20, but it offers no proposed amendment, and the only unconventional feature it has identified is the abstract idea itself, which no allegation can change. *See supra* § I.B. Therefore, this Court should dismiss SpectraNet's Complaints with prejudice.

Dated: November 6, 2026

Respectfully submitted,

*/s/ Brian Sodikoff*
Brian Sodikoff
Matthew T. Messina
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661
312.902.5200
brian.sodikoff@katten.com
matthew.messina@katten.com

Christopher B. Ferenc (*pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
1919 Pennsylvania Ave., NW, Suite 800
Washington, DC 20006
202.625.3647
christopher.ferenc@katten.com

*Attorneys for Defendants IMC-Chicago, LLC d/b/a IMC Trading; IMC Americas, Inc.; IMC Global Holdings LLC; RCA Telecom LLC; and Toggle Communications LLC*

*/s/ Steven J. Horowitz*
Steven J. Horowitz
shorowitz@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
Telephone: 312.853.7000

Brian A. Rosenthal (*pro hac vice*)
brosenthal@gibsondunn.com
Benjamin Hershkowitz (*pro hac vice*)
bhershkowitz@gibsondunn.com
Alena Farber (*pro hac vice*)
afarber@gibsondunn.com
Michelle J. Zhu (*pro hac vice*)
mzhu@gibsondunn.com
Talus Iorio-Ronek (*pro hac vice*)
tiorio-ronek@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

Ting-Wei Chiang (*pro hac vice*)
atchiang@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: 202.955.8500
Facsimile: 202.831.6106

Al Suarez (*pro hac vice*)
asuarez@gibsondunn.com
Julia Tabat
jtabat@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-2923
Telephone: 214.698.3100

*Attorneys for Defendants Optiver Services B.V. and County Information Services, LLC*

/s/ *William E. Devitt*
William E. Devitt
Matthew J. Hertko
Ruth Brindel
**JONES DAY**
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: wdevitt@jonesday.com
mhertko@jonesday.com
rbrindel@jonesday.com

John R. O'Donnell (*pro hac vice*)
**JONES DAY**
555 S. Flower St.
Los Angeles, CA 90071
Telephone: (213) 243-2155
Facsimile: (213) 243-2539
Email: jodonnell@jonesday.com

*Attorneys for Defendants Jump Financial, LLC; Jump Trading Holdings, LLC; Jump Trading, LLC; and World Class Wireless, LLC*

/s/ *Catherine Nyarady*
Catherine Nyarady (*pro hac vice*)
Thomas Macchio (*pro hac vice*)
Stephanie L. Chin (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Tel.: 212.373.3000
cnyarady@paulweiss.com
tmacchio@paulweiss.com
schin@paulweiss.com

David E. Cole (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
Tel.: 202.223.7300
dcole@paulweiss.com

William J. Cadigan
**AKIN GUMP STRAUSS HAUER & FELD LLP**
190 S. LaSalle Street, Suite 2800
Chicago, IL 60603
Tel.: 312.276.0400
wcadigan@akingump.com
IL Attorney Reg. No.: 6211964

Cono A. Carrano (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K Street, NW
Washington, DC 20006
Tel.: 202.887.4000
ccarrano@akingump.com

*Attorneys for Defendant Virtu Financial, Inc.*

*/s/ William E. Devitt*
William E. Devitt
Matthew J. Hertko
Ruth Brindel
**JONES DAY**
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: wdevitt@jonesday.com
mhertko@jonesday.com
rbrindel@jonesday.com

John R. O'Donnell (*pro hac vice*)
**JONES DAY**
555 S. Flower St.
Los Angeles, CA 90071
Telephone: (213) 243-2155
Facsimile: (213) 243-2539
Email: jodonnell@jonesday.com

Catherine Nyarady (*pro hac vice*)
Thomas Macchio (*pro hac vice*)
Stephanie L. Chin (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Tel.: 212.373.3000
cnyarady@paulweiss.com
tmacchio@paulweiss.com
schin@paulweiss.com

David E. Cole (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
Tel.: 202.223.7300
dcole@paulweiss.com

*Attorneys for Defendants New Line Networks LLC and 10Band LLC*

/s/ *Adam P. Samansky*
Jeremy S. Goldkind
Sophia Gunzburg
**VENABLE LLP**
227 West Monroe Street, Suite 1900
Chicago, IL 60606
312.210.1522
jsgoldkind@Venable.com

Adam P. Samansky (to be admitted *pro hac vice*)
Peter J. Cuomo (to be admitted *pro hac vice*)
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
One Financial Center
Boston, MA 02111
617.348.1819
APSamansky@mintz.com

*Attorneys for Defendants Raft Technologies Ltd. and 3DB Communication Inc.*